# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Malte L. L. Farnaes (222608)<br>Farnaes & Lucio, APC<br>2235 Encinitas Blvd. Ste. 210<br>Encinitas, California 92024<br>TELEPHONE NO.: (760) 942-9431  FAX NO.:<br>ATTORNEY FOR *(Name):* malte@farnaeslaw.com | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**06/27/2018** at 03:29:03 PM<br>Clerk of the Superior Court<br>By Mary M Johnson,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, California 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Bagosy v. PHH Mortgage Corporation

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 30-2018-01002146-CU-CO-CJC |
|---|---|---|---|---|
| ☑ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: Judge David Chaffee<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☑ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):*  10
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: June 27, 2018
Malte L. L. Farnaes
(TYPE OR PRINT NAME)  ▶  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

PHH MORTGAGE SERVICES and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JENNIFER BAGOSY and ALEX BAGOSY

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**07/27/2018** at 05:28:00 PM

Clerk of the Superior Court
By Mary M Johnson, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court, County of Orange

700 Civic Center Drive West
Santa Ana, CA 92701

CASE NUMBER:
30-2018-01002146-CU-CO-CJC

Judge David Chaffee

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Malte L.L. Farnaes, Farnaes & Lucio, 2235 Encinitas Blvd., Ste 210 Encinitas, CA 92024 (760)942-9431

DATE: 07/27/2018    David H. Yamasaki, Clerk of the Court    Clerk, by _____, Deputy
*(Fecha)*    *(Secretario)*    Mary M Johnson    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

1   Malte L.L. Farnaes (SBN 222608)
    Christina M. Lucio (SBN 253677)
2   Mitchell J. Murray (SBN 285691)
    FARNAES & LUCIO, APC
3   2235 Encinitas Boulevard, Suite 210
    Encinitas, California 92024
4   Telephone:  (760) 942-9431

5   Attorneys for Plaintiffs
    JENNIFER BAGOSY and ALEX BAGOSY

6

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/27/2018** at 03:29:03 PM
Clerk of the Superior Court
By Mary M Johnson, Deputy Clerk

7           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                   **FOR THE COUNTY OF ORANGE**

9

10  JENNIFER BAGOSY and ALEX
    BAGOSY,

11          Plaintiffs,

12      vs.

13  PHH MORTGAGE SERVICES and DOES
    1 through 50, inclusive,

14

15          Defendants.

16

17

18

19

Case No.: 30-2018-01002146-CU-CO-CJC

Judge David Chaffee

**COMPLAINT**

(1)  Intentional Misrepresentation;
(2)  Negligent Misrepresentation;
(3)  Fraud
(4)  Breach of Contract;
(5)  Promissory Estoppel;
(6)  Breach of Covenant of Good Faith and
     Fair Dealing;
(7)  Negligence;
(8)  Violation of Civil Code § 2923.7
(9)  Violation of Bus. & Prof. Code §
     17200; and
(10) Intentional Infliction of Emotional
     Distress

**Jury Trial Demanded**

20

21

22

23

24

25

26

27

28

Plaintiffs Jennifer Bagosy and Alex Bagosy ("Plaintiffs") alleges as follows:

**THE REAL PROPERTY AND PARTIES**

1.      Plaintiffs are, and at all times herein relevant were, adult individuals residing in California.

2.      The action is brought against Defendants PHH MORTGAGE SERVICES; and DOES 1 through 50, inclusive (collectively, "Defendants") for damages and equitable relief resulting from the Defendants' acts and/or omissions as set forth herein concerning the residential mortgage loan transaction and forbearance ("Subject Loan") regarding real property located at 15 Oatfield Farm, Ladera Ranch, CA 92694 ("Subject Property").

3.      Defendant PHH MORTGAGE SERVICES ("PHH") was at all times relevant to this action the lender and servicer of the Subject Loan. PHH is now engaged and at all times herein relevant was engaged in conducting business in the County of Orange, State of California.

4.      Whenever reference is made herein to any act of Defendants or any other corporate or business entity, that reference shall mean that the Defendant or other entity did the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives while acting within the actual and ostensible scope of their authority.

5.      Plaintiffs are unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 50 but will seek leave of this Court to amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

6.      Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 50 are the partners, agents, owners, shareholders, managers or employees of PHH at all relevant times.

7.      Plaintiffs are informed and believe, and thereon allege, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, PHH and/or DOES 1 through 50 (collectively "Defendants"), each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of any and all Defendants were in accordance

1   with, and represent, the official policy of Defendants.

2   **JURISDICTION AND VENUE**

3       8.      This Court has jurisdiction over this action pursuant to the California

4   Constitution, Article VI, section 10.

5       9.      The Subject Property is located at 15 Oatfield Farm, Ladera Ranch, CA 92694

6   in Orange County, California.

7       10.     This Court has jurisdiction over all Defendants because, upon information and

8   belief, Defendants have sufficient minimum contacts in California, and/or otherwise

9   intentionally avail themselves of the California market so as to render the exercise of

10  jurisdiction over them by the California courts consistent with traditional notions of fair play

11  and substantial justice.

12      11.     Venue is proper in this Court because, upon information and belief, Defendants

13  reside, transact business, or have offices in Orange County and the acts and omissions alleged

14  herein took place in Orange County.

15      12.     At all relevant times, Defendants, and each of them, ratified each and every act

16  or omission complained of herein.  At all relevant times, Defendants, and each of them, aided

17  and abetted the acts and omissions of each and all the other Defendants in proximately causing

18  the damages herein alleged.

19      13.     Plaintiffs are informed and believe, and thereon allege, that each of said

20  Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts,

21  omissions, occurrences, and transactions alleged herein.

22  **GENERAL ALLEGATIONS**

23      14.     On or about April 18, 2006, Plaintiffs purchased the Subject Property for the

24  price of $630,000.00.  Plaintiffs' purchase was financed with a home mortgage loan ("Subject

25  Loan") from PHH in the amount of $504,000, on which Plaintiff Jennifer Bagosy was the

26  borrower.

27      15.     Plaintiff Jennifer Bagosy also contracted with National City Bank, N.A. on or

28  about April 18, 2016, to obtain a second home mortgage loan to use to purchase the Subject

COMPLAINT

1    Property in the amount of $126,000 (the "Second Mortgage"). The Second Mortgage was

2    ultimately transferred, first to Green Tree Financial, and then to Ditech.

3          16.    Plaintiffs Jennifer Bagosy and Alex Bagosy are married and were joint owners

4    of the Subject Property from April 2006 through February 2017, as both were named on the

5    deed thereto.

6          17.    The Subject Loan was an Adjustable Rate Mortgage ("ARM") with interest-

7    only to be paid for 5 years, followed by payments of principal and interest at an adjustable rate

8    thereafter.  Monthly payments for the first 5 years were for interest-only at 6.125% interest in

9    the amount of approximately $2950 per month, which included escrow for the payment of

10   Orange County property taxes.  After the initial 5-year period expired, monthly payments

11   were for principal and interest at a variable interest rate, in the amount of approximately

12   $3,050 per month, which included property tax escrow. Monthly payments on the Subject

13   Loan ultimately increased to $3,500 in or about 2015.  Payments on the Second Mortgage

14   were $946.60 per month.

15         18.    In and after 2008, the financial crisis, which especially impacted property

16   values in Orange County, California, caused the value of the Subject Property to crash, so

17   that, upon information and belief, its estimated value was approximately $420,000 as of 2009

18   and fell again to approximately $390,000 in 2011.  Nonetheless, Ms. Bagosy paid as agreed on

19   both the Subject Loan and Second Mortgage until 2015.  By 2015, home values in Orange

20   County had begun to recover, although the value of the Subject Property was still less than the

21   outstanding amount of the Subject Loan and Second Mortgage (i.e., the home was still

22   "underwater").

23         19.    In early 2015, Plaintiffs began to experience financial difficulties.

24         20.    Ms. Bagosy contacted PHH regarding a possible forbearance or modification of

25   the Subject Loan.   In or about March 2015, the Subject Loan was assigned to PHH Case

26   Manager Dawn Meng. In a written letter sent to Plaintiff Jennifer Bagosy in or about March

27   2015 and in letters on several subsequent occasions, PHH stated that if Ms. Bagosy sent a

28   complete loan modification package, Defendants would review it, consider it, and make a

1   determination thereon within 30 days.

2       21.     Over the course of the next two years, Plaintiffs discovered that PHH's pattern

3   and practice of dealing with borrowers in distress was to act in bad faith and intentionally

4   delay the resolution process, because the market was rising and PHH wished to prolong the

5   resolution process to enable interest on the loan to continue to accrue and to extract maximum

6   value from the home, preferably through foreclosure.  PHH's policies for receiving, reviewing

7   and responding to loan modification packages, were intentionally designed to thwart

8   borrowers', including Plaintiffs', efforts to obtain relief.  Moreover, throughout the process,

9   PHH negligently and intentionally failed to ensure that its representatives provided Plaintiff

10  with consistent and correct information regarding resolution options. As a consequence of

11  PHH's intentional, bad-faith and fraudulent dilatory practices, Plaintiffs suffered damages in

12  the form of financial harm, extended damage to Ms. Bagosy's creditworthiness, and severe

13  emotional distress.

14              **PHH's Disregard of, Alteration, and Destruction of**

15      **Materials Submitted in Support of Plaintiff's Loan Modification Packages**

16      22.     Throughout Plaintiffs' dealings with PHH beginning in early 2015, it was clear

17  that PHH had implemented policies and practices that were intentionally, or, at minimum,

18  negligently, designed to ensure that borrower requests for assistance would be unreasonably

19  delayed and that Plaintiffs would not receive timely and accurate information regarding Ms.

20  Bagosy's loan modification application. PHH would not consider a loan modification

21  application until it was "complete," yet PHH maintained policies and practices that

22  intentionally, fraudulently, and in bad faith, placed obstacles designed to prevent borrowers'

23  packages from being completed. These policies and practices, each of which Plaintiffs

24  personally experienced, were as follows:

25      a.  PHH forbid Case Managers, i.e., the supposed "single point of contact" for

26          borrowers, from opening attachments to e-mails sent by borrowers (e.g., Case

27          managers were not allowed to "receive documents.").

28      b.  PHH forbid Case Managers from responding to borrowers' questions by e-mail,

1        only by phone, to ensure there is no written record of PHH's representations.

2       c.  PHH notifies borrowers that documents in a submitted loan package are missing or

3           incomplete or that further information or responses from the borrower are required,

4           by regular mail, and the time to do so can take 2-3 weeks. Because these letters

5           typically state a deadline by which the borrower must provide the additional or

6           corrected information, PHH's delays in mailing these notices deprives the borrower

7           of some or all of the time needed to prepare the additional information.

8       d.  The most inexpensive and fastest method for a borrower in financial hardship to

9           send documents directly to PHH is by scanning and e-mailing the documents, yet

10          PHH prints and re-scans PDF documents, intentionally increasing the chances that

11          they'll be "illegible" or that pages will fail to be scanned.

12      e.  The Case Manager is expressly forbidden to act as a "check" on these processes

13          because PHH forbids Case Managers to open documents sent by borrowers.

14      f.  PHH also maintains a pattern and practice of intentionally and/or negligently

15          "misplacing" and/or discarding documents sent as part of loan modification

16          packages that are sent via e-mail, fax, overnight mail, and regular mail.

17       23.    In or about February 2015, Plaintiff Jennifer Bagosy contacted PHH requesting

18   either a forbearance or modification of the Subject Loan.  PHH mailed Ms. Bagosy a set of

19   documents to complete and instructions. One of these documents was the UBAF (Uniform

20   Borrower Assistance Form), which stated that if the reason for the borrower's request for

21   modification was unemployment or reduction in income, the borrower did not need to submit

22   hardship documentation such as pay stubs, tax returns, or financial statements. As Ms. Bagosy

23   was experiencing a reduction in income and impending unemployment, she submitted the

24   package by regular mail in February 2015 without the hardship documentation, relying on the

25   statement in the UBAF.

26       24.    Approximately three weeks later, PHH sent Ms. Bagosy a letter listing

27   documents that were missing from the package.  That letter listed as missing not only the

28   hardship documentation the UBAF had said was not needed in cases of unemployment or

1  reduction in income, but other documents that Ms. Bagosy had submitted by mail.  Plaintiff

2  Jennifer Bagosy spoke with Ms. Meng on March 12, 2018, who read the list of missing

3  documents and stated that the new package could be submitted via mail, fax, or e-mail. Ms.

4  Meng followed up with an e-mail from the address Dawn.Meng@mortgagefamily.com

5  attaching the required forms.

6       25.    During this and other conversations, Ms. Meng informed Ms. Bagosy that PHH

7  did not permit her to answer borrowers' questions or comment on the Subject Loan or the

8  status of Ms. Bagosy's modification requests by e-mail; PHH policy would only allow Ms.

9  Meng to answer questions or comment on the Subject Loan by phone.  Mrs. Meng informed

10  Ms. Bagosy that she could send loan modification package documents to Ms. Meng's e-mail

11  address, and that Ms. Meng would forward them within PHH for review.

12       26.    On March 25 and 26, 2015, Plaintiff Jennifer Bagosy e-mailed the loan

13  modification package with the additional documents in three (3) e-mails to

14  Dawn.Meng@mortgagefamily.com, the e-mail address from which the blank documents and

15  forms had been sent to Ms. Bagosy.  The documents were sent in separate e-mails due to the

16  size of the attachments.

17       27.    In Ms. Bagosy's March 26, 2015 e-mail to Ms. Meng, she also noted that

18  although the instructions required tax returns for prior years to be signed and dated; Plaintiffs'

19  joint tax returns had been electronically filed by a CPA and thus they did not have signed or

20  dated copies.

21       28.    On March 31, 2015, Plaintiff Jennifer Bagosy sent an e-mail to Ms. Meng

22  checking on the status of the package and inquiring what to do regarding past tax returns,

23  given that Plaintiffs' CPA had confirmed there were no copies of Plaintiffs' tax returns with

24  physical signatures and dates due to electronic filing.  Ms. Bagosy said she and her husband

25  could sign and date them before submitting them to PHH and asked if they should be given

26  the present date or the date of filing.  Ms. Bagosy requested a call back, as she understood

27  PHH did not permit Ms. Meng to reply to such questions by e-mail.

28       29.    Ms. Bagosy did not receive a response, so she called again on April 1, 2015.

1    Ms. Meng was not available on April 1, and Plaintiff was transferred to PHH representative

2    Audrey Wells.  Ms. Wells informed Ms. Bagosy that she and her husband could sign their past

3    jointly-filed tax returns anywhere on the document and with the current date, and then submit

4    them with the loan modification package. Ms. Wells also informed Ms. Bagosy, upon

5    reviewing the loan modification documents, that Ms. Bagosy had submitted bank statements

6    for the incorrect time period.  While Ms. Bagosy had sent her last two (2) bank statements as

7    the written instructions required, Ms. Wells said that the bank statements had to comprise two

8    full months.  Because Plaintiffs' bank statements were issued on the 23rd or 24th of each

9    month, according to Ms. Wells, Plaintiffs should provide more than two statements to cover

10   all 30-31 days of the prior two months. Ms. Wells told Ms. Bagosy that she must submit bank

11   statements with all their pages – even any pages at the end that were intentionally left blank.

12         30.    Ms. Bagosy submitted the updated and corrected loan modification documents,

13   including the additional bank statements and the required past tax returns, signed and dated

14   with the current date, to Dawn.Meng@mortgagefamily.com in four (4) e-mails dated April 3,

15   2015.

16         31.    In late April 2015, Ms. Bagosy received in the mail a letter from PHH listing

17   numerous documents as missing from her loan modification package, including many

18   documents she had sent on March 26, 2015 and on April 3, 2015.  On April 26, 2015, Plaintiff

19   left a voice mail for Ms. Meng and did not receive a response.  On May 4, 2015, Plaintiff

20   called and spoke with Ms. Meng and asked her why documents she had sent to Ms. Meng

21   were listed as missing.  Ms. Meng said, "I cannot receive documents," and said that Ms.

22   Bagosy should have sent the loan modification package documents to

23   hat@mortgagefamily.com. When Ms. Bagosy reminded Ms. Meng that she had agreed to

24   forward any documents sent to her email address to the necessary parties within PHH, Ms.

25   Meng said she had only received one email containing two documents from Ms. Bagosy,

26   which she had forwarded.  Ms. Meng instructed Ms. Bagosy to resubmit her loan modification

27   package to hat@mortgagefamily.com, cc'ing Ms. Meng's e-mail, with an updated hardship

28   letter and a new financial statement.

32.     Plaintiff Jennifer Bagosy called Ms. Meng again on May 8, 2015 with additional questions about the loan modification package. While on the phone call, Ms. Meng searched her e-mail inbox and said that she did have the four (4) e-mails Ms. Bagosy had sent on April 3, 2015. When Ms. Bagosy asked why Ms. Meng only forwarded one of the e-mails and not the others, Ms. Meng would only say, "I cannot receive documents." When Ms. Bagosy asked Ms. Meng to open the attachments to each of the four April 3, 2015 e-mails, and advise Ms. Bagosy if anything was missing, Ms. Meng said again, "I cannot receive documents." Ms. Meng thus confirmed that, despite being Ms. Bagosy's Case Manager and purported single point of contact, PHH policy did not allow her to open or review documents Ms. Bagosy sent as part of her loan modification application.

33.     On the May 8, 2015 call, Ms. Bagosy also asked Ms. Meng about the information Ms. Wells had given her on April 1, 2015 – that the tax returns could bear the current date (rather than be backdated to the date they were filed) and that the bank statements had to contain two calendar months' worth of information, regardless of the day of the month on which the bank statements were issued. Ms. Meng informed Ms. Bagosy that Ms. Wells had been incorrect regarding the dates on tax returns and the dates of bank statements. Ms. Meng said that Plaintiffs had to sign and back-date the tax returns to the date of filing, and that Plaintiffs only needed to submit the last two bank statements the bank had issued.

34.     On May 8, 2015, Ms. Bagosy sent to hat@mortgagefamily.com, cc Dawn.Meng@mortgagefamily.com, in three (3) e-mails, the updated/corrected documents Ms. Meng requested (the updated hardship letter, new financial statement, two bank statements, and tax returns signed and dated to the original dates), as well as the documents originally provided in the April 3, 2015 e-mail.

35.     On May 18, 2015, Ms. Bagosy called Ms. Meng to ask if the loan modification package was complete. She said that PHH had sent a letter on May 13, 2015 (which Ms. Bagosy had not yet received) with a list of missing or incomplete items. Ms. Meng read the letter over the phone, and the list included almost all the documents Ms. Bagosy had sent. Ms. Meng said that most of the documents were illegible in PHH's electronic system. Ms. Bagosy

COMPLAINT

1   reviewed the documents she had attached to her May 8 e-mail and confirmed they were all

2   legible.  Ms. Meng then explained that PHH's policy and practice was to receive documents at

3   the hat@mortgagefamily.com email address, then print them, and then re-scan them into

4   PHH's electronic system.  Ms. Meng was looking at the documents on PHH's electronic

5   system and said many appeared illegible.  Ms. Bagosy asked Ms. Meng to open the documents

6   as Ms. Bagosy had sent them in her May 8 email (on which she had cc'd Ms. Meng).  Ms.

7   Meng informed Ms. Bagosy again that "Case Managers cannot receive documents," and that

8   PHH did not permit her to open the loan modification documents attached to Ms. Bagosy's e-

9   mail to confirm whether they were legible as sent, or whether PHH's scanning process had

10  made them illegible. Ms. Meng was only allowed to view Ms. Bagosy's documents through

11  PHH's electronic system, after other PHH representatives had printed them and re-scanned

12  them.

13          36.      During the May 18, 2015 phone call, Ms. Meng also informed Ms. Bagosy that

14  when she had said to "re-submit" the other documents from March (in addition to the signed

15  tax returns, updated financial statement and bank statements), she actually meant that Ms.

16  Bagosy was supposed to re-do all the forms and documents to the present date.  Ms. Bagosy

17  asked how she could guarantee the documents would not become illegible again after PHH

18  printed them and re-scanned them. Ms. Meng said she would send a UPS envelope with a self-

19  addressed return envelope in which Ms. Bagosy could send hard copies of the documents.

20          37.      On or about May 25, 2015, Ms. Bagosy completed the documents, made a copy

21  of the entire loan modification package to keep, and placed the original in the prepaid UPS

22  envelope Ms. Meng had provided and sent it to PHH.

23          38.      On or about May 29, 2015, Ms. Bagosy called Ms. Meng to determine whether

24  the loan modification package was now complete.  Ms. Meng did not have the hard copy of

25  the papers Ms. Bagosy had sent; rather, she was reviewing them on PHH's electronic system;

26  someone else had received the package and scanned in the documents earlier that day.  Ms.

27  Meng said that there were two non-sequential pages missing from one of the bank statements.

28  Ms. Bagosy insisted that she was looking at an exact copy of the package as she'd sent it and

1     those pages were present in her copy.  Ms. Meng then asked Ms. Bagosy to wait while she

2     attempted to track down the hard copy of Ms. Bagosy's package, as it was in an office in the

3     same building.  When Ms. Meng returned, she said she had found the original missing pages.

4     When Ms. Bagosy sarcastically asked if she had found them in the trash, Ms. Meng admitted

5     they had been discarded.  Shortly thereafter, PHH finally deemed Ms. Bagosy's loan

6     modification package "complete" and could begin to consider it.

7          39.     During 2015, Ms. Bagosy fell behind by approximately two months on her

8     mortgage payments and was unable to come current. PHH representatives in the collections

9     department (which was separate from Ms. Meng's homeowner assistance department) had

10    assured Ms. Bagosy that Defendants would not place the Subject Property into active

11    foreclosure unless payments on the Subject Loan were at least 90 days past due.

12                              **PHH's "Forbearance" Agreement**

13         40.     On or about June 29, 2015, PHH sent a letter to Plaintiff Jennifer Bagosy

14    offering a temporary, three-month "forbearance," during which the payments on the Subject

15    Loan would be reduced from $3500 a month to $700 per month for August, September, and

16    October 2015 ("Forbearance"). Ms. Bagosy made the $700 payments in August, September,

17    and October 2015 as required.

18         41.     On or about October 8, 2015, PHH sent a Notice of Default on the Subject

19    Loan, stating that it was five (5) months past due, that PHH had accelerated the Subject Loan,

20    that the Subject Loan was in default, and that PHH would not accept the $2100 in forbearance

21    payments Ms. Bagosy had made in $700 installments in August, September and October.

22    PHH's Notice stated that unless Ms. Bagosy could pay $14,000 by November 12, 2018, PHH

23    would foreclose on the Subject Property.

24         42.     On or about October 14, 2015, Dawn Meng informed Ms. Bagosy that an

25    unidentified "processor" would not extend the forbearance period.

26         43.     On or about October 21, 2015, Ms. Bagosy spoke with Dawn Meng again,

27    stating that the Notice of Default was improper because Ms. Bagosy had made the required

28    $700 payments in each of August, September, and October 2015 and thus those months could

1 | not be counted as past due.  Dawn Meng asserted that while the Forbearance permitted Ms.

2 | Bagosy to *pay* $700 per month during August, September, and October 2015, the Forbearance

3 | did not obligate Defendants to *accept* $700 per month during those months.  Ms. Meng stated

4 | in the October 21, 2015 call that if Ms. Bagosy could make four (4) full mortgage payments

5 | ($14,0000) less the $2100 PHH was holding for a total of $11,900 by November 12, 2015,

6 | Ms. Bagosy could potentially avoid foreclosure. Also, if Ms. Bagosy was unable to make the

7 | $11,900 payment, PHH would not refund the $2100 it was now refusing to apply toward the

8 | Subject Loan.

9 | 44.    Plaintiffs were unable to pay $11,900. Ms. Bagosy submitted another loan

10 | modification package by e-mail on October 19, 2015 seeking a permanent modification of the

11 | Subject Loan. Ms. Bagosy called on October 21, 2015, and Dawn Meng said the documents

12 | had been printed and re-scanned into the system that day and to call back after 48 hours when

13 | PHH had assessed whether the package was complete.   After trying at least twice and being

14 | unable to reach Ms. Meng, Ms. Bagosy called on October 27, 2015, and spoke to Frances

15 | Ortiz at PHH.  Ortiz stated that a letter had been mailed on October 25, 2015 claiming that the

16 | financial statement was illegible, but stating that the application was in the process of being

17 | assigned to a case manager.

18 | 45.    Plaintiff Jennifer Bagosy followed up by submitting a hard copy of all required

19 | loan modification package materials on October 31, 2015.  This package was later rejected as

20 | incomplete due to documents PHH claimed were "missing" that Ms. Bagosy had, in fact,

21 | submitted. Also, at about the same time, knowing that it would take months for a permanent

22 | loan modification application to be deemed "complete" given PHH's intentional, fraudulent

23 | and bad faith policies and practices regarding loan modification documents, Plaintiffs decided

24 | to attempt a short sale of the home to avoid foreclosure. During this time, Plaintiffs suffered

25 | damages including out of pocket expenses, harm to creditworthiness, and severe emotional

26 | distress.

27 | **Plaintiffs' First Short Sale Attempt**

28 | 46.    Plaintiffs signed a listing agreement with a real estate broker, Land Pacific

1   Realty ("Land Pacific"), on November 3, 2015. The Subject Property was listed shortly

2   thereafter for $545,000. On November 17, 2015, Plaintiffs' broker informed them that a buyer

3   had approached him with an offer of $440,000.  He received a payoff quote from PHH of

4   $453,653.13 on the Subject Loan on December 7, 2015, and a payoff quote from Ditech of

5   $117,789.46 for the Second Mortgage on December 4, 2015.

6          47.    Upon information and belief, Land Pacific informed PHH of the $440,000

7   offer, and PHH told Land Pacific that it would not accept $440,000.  Land Pacific received no

8   other offers on the Subject Property. Plaintiffs later learned that PHH never presented this

9   offer to Wells Fargo Bank, N.A. ("Wells Fargo"), who upon information and belief was the

10  investor whose approval of any offer(s) on the home would be necessary to complete a short

11  sale.

12         48.    In late December 2015, Land Pacific informed Plaintiffs that PHH had placed

13  the Subject Property in active foreclosure, and that PHH suggested Plaintiffs attempt to

14  negotiate a deed in lieu of foreclosure.

15         49.    In December 2015, Plaintiff Jennifer Bagosy began working for an employer in

16  Los Angeles, approximately 70 miles from her home.  Plaintiffs wanted to move out of the

17  Subject Property to a location closer to Ms. Bagosy's place of employment. However, because

18  PHH informed Ms. Bagosy that any form of foreclosure relief, including a deed in lieu of

19  foreclosure or a short sale, depended upon Ms. Bagosy continuing to live in the Subject

20  Property as her primary residence, she was required to commute 140 miles round-trip, 2-3

21  hours each way, to work 5 days a week.  PHH's bad-faith delays in 2016 in, first, deciding to

22  reject Ms. Bagosy's deed in lieu of foreclosure application four months after she submitted it

23  based on misleading information provided to her at the time of application, and second,

24  delaying her second short sale application for nine months based on the same pattern and

25  practice of intentionally and/or negligently misplacing documents and/or scanning them so as

26  to be "illegible," caused Plaintiffs injury in the form of increased expense as well as physical

27  and emotional distress.

28                **Plaintiff's Application to PHH for a Deed in Lieu of Foreclosure**

1    50.    On January 7, 2016, Plaintiff Jennifer Bagosy again contacted PHH's

2    homeowner assistance team and was transferred to Andrew McCann, with whom she spoke

3    regarding a deed in lieu of foreclosure.  He reviewed PHH's information for the Subject Loan

4    and stated that he believed the deed in lieu of foreclosure had a good chance of success

5    because she had exhausted other forms of relief.  Mr. McCann did not mention the Second

6    Mortgage on the Subject Property as a potential barrier to a deed in lieu of foreclosure. Mr.

7    McCann e-mailed Ms. Bagosy the application materials.

8    51.    Ms. Bagosy submitted the completed application materials for a deed in lieu of

9    foreclosure to PHH via e-mail to hat@mortgagefamily.com on January 16 and 17, 2016,

10   copying Mr. McCann. Over the next several weeks, Ms. Bagosy regularly called PHH to

11   check on the status of the application.  Several times, she was told to send more documents at

12   the behest of the investor, Wells Fargo, or because, again, the PDF documents she sent to

13   PHH's "central" email address, hat@mortgagefamily.com, were illegible after PHH had

14   printed and re-scanned them. For example, in February 2016, a PHH representative told her

15   that her 1/22/16 and 2/5/16 pay stubs that Ms. Bagosy had sent via email were illegible (e.g.,

16   after having been printed and re-scanned into the PHH system), so Ms. Bagosy faxed another

17   copy of those paystubs to PHH on February 18, 2016. On February 23, 2016, "Ann" at PHH

18   said the fax had not yet been received. She said she did not know why the prior PHH

19   representative had said the 1/22/16 paystub was illegible on PHH's system as she could read it

20   perfectly, but claimed the 2/5/16 stub was illegible. Ann told Ms. Bagosy to call another day

21   to see if the fax was received.

22   52.    On February 29, 2016, Ms. Bagosy left two voice messages for Ms. Meng

23   asking about the status of the February 18 fax, and trying with no success to reach another

24   PHH representative.

25   53.    On March 2, 2016, Plaintiff Jennifer Bagosy called for Ms. Meng, who was not

26   available, so she spoke with "Jessica" at PHH.  Jessica said that PHH had never received the

27   February 18 fax with Ms. Bagosy's 1/22 and 2/5/16 paystubs, and that Ms. Bagosy needed not

28   only to re-send those again (she disagreed with "Ann's" interpretation of the 2/5/16 paystub as

1   legible) but now that time had passed, Ms. Bagosy also needed to send her 2/22/16 paystub.

2   Ms. Bagosy promptly did so. On March 4, 2016, Ms. Bagosy called PHH to check the status

3   of the three paystubs.  Ms. Meng was unavailable, so Ms. Bagosy spoke to "Stephanie" at

4   PHH, who said that while the system had been "updated" to show that documents had been

5   received, it would take another 24-48 hours for PHH to re-scan and upload the documents so

6   that someone could review them on PHH's system.

7         54.    On March 8, 2016, PHH informed Ms. Bagosy that her application for a deed in

8   lieu of foreclosure had been deemed "complete" and would be accepted for processing. Ms.

9   Bagosy continued to attempt to call Ms. Meng on March 9, March 10, March 18, and March

10   23, but she was unavailable. On March 23, 2016, PHH informed Ms. Bagosy by phone that

11   there were no updates and no action she needed to take.

12         55.    On March 31, 2016, Ms. Bagosy called PHH again, and spoke to "Jessica"

13   because Ms. Meng was unavailable. Jessica told Plaintiff that PHH had mailed Plaintiff a

14   letter on March 9, 2016 preliminarily approving the deed in lieu of foreclosure, that the letter

15   stated that time was of the essence, and that Plaintiff needed to contact PHH to accept or

16   decline no later than March 28, 2016.  Plaintiff never received the letter at any time during

17   March 2016 or thereafter, nor did Ms. Meng nor anyone else at PHH contact her by phone or

18   e-mail regarding the pending preliminary approval and offer of deed in lieu of foreclosure.

19   Nevertheless, Ms. Bagosy informed Jessica that although she hadn't received the letter, she

20   wished to have the opportunity to accept and move forward with the deed, because Ms.

21   Bagosy wanted to resolve the matter and should not be penalized for missing a "deadline" in a

22   letter she never received.  Jessica did not have the authority to determine whether a late

23   acceptance would be permitted; she said Ms. Bagosy would have to speak with Ms. Meng

24   when she returned, but said she would put a note in the record.

25         56.    On April 1, 2016, Plaintiff Jennifer Bagosy spoke with Ms. Meng, who stated

26   that PHH's records showed that Plaintiff had validly accepted what Ms. Meng termed a

27   "preapproval" letter, and that Plaintiff would be transferred to PHH representative Lola Grace

28   for further handling of the deed in lieu application.

COMPLAINT

1    57.    Ms. Bagosy followed up with Ms. Grace via e-mail on April 1, 2016 to inquire

2    about the status of the deed in lieu application.  Ms. Grace did not respond until April 15,

3    2016, when she stated that, according to the terms of the March 9, 2016 letter – which

4    Plaintiff had still never received – "clean title" was required for a deed in lieu of foreclosure,

5    which meant that the Second Mortgage (which Ms. Grace stated now totaled $126,000) had to

6    be entirely paid off for the deed in lieu to be approved.  Although Ms. Bagosy had discussed

7    the Second Mortgage with PHH representatives including Mr. McCann and Ms. Meng, both of

8    whom were aware of the Second Mortgage, this was the first time PHH had informed Ms.

9    Bagosy the Second Mortgage could be a barrier to a deed in lieu of foreclosure.  Ms. Grace

10   suggested Ms. Bagosy list the home again to attempt a short sale.

**Plaintiffs' Second Short Sale Attempt**

12   58.    In early May 2016, Plaintiff Jennifer Bagosy spoke with Ms. Meng and Ms.

13   Grace about requirements for a short sale, and each gave inconsistent information regarding

14   the requirements.

15   59.    On or about May 14, 2016, Plaintiffs again listed the Subject Property for sale

16   through Coldwell Banker for $499,900.00.  On May 19, 2016, Coldwell Banker presented,

17   and Plaintiffs signed and accepted, an offer of purchase for the same amount.

18   60.    In order for PHH to consider the short sale as an alternative to foreclosure,

19   Plaintiffs had to submit another "complete" loan modification package.  Plaintiffs' brokers at

20   Coldwell Banker dealt with PHH to attempt to complete the package, but, upon information

21   and belief, Plaintiffs' brokers encountered the same intentional, bad faith and fraudulent

22   course of conduct that Plaintiffs had encountered – documents would go "missing" or be

23   scanned into PHH's system as illegible, regardless of whether they were submitted by e-mail,

24   fax, or mail.  In addition, PHH would demand of Coldwell Banker documents that did not

25   exist.  For example, beginning in May 2016, PHH demanded Plaintiffs' 2016 tax returns,

26   which Plaintiffs had not yet filed and which were not due pursuant to an extension from the

27   IRS until October 2016.  Because the IRS had not sent a form to Plaintiffs reflecting the grant

28   of the extension, and did not send one after Plaintiffs called to request it, PHH required

COMPLAINT

1   Plaintiffs to prepare and file their tax returns early. PHH also demanded pay stubs for time

2   periods when Ms. Bagosy was not employed and had no pay stubs.  In short, despite

3   Plaintiffs' and Coldwell Banker's prompt responses, PHH intentionally, fraudulently, and in

4   bad faith manipulated records and invented non-existent requirements to ensure that Plaintiffs'

5   loan modification package would not be completed in a timely manner so that PHH would not

6   have to consider the short sale offer, but rather could delay and achieve maximum benefit

7   from the rising local housing market, at Plaintiffs' expense and in a manner that increased the

8   interest on the Subject Loan, making resolution more difficult over time, and increased

9   Plaintiffs' damages.

10       61.     On May 29, 2016, PHH sent their appraiser to the Subject Property.  The

11   appraiser failed to list numerous defects and required repairs in his report and valued the

12   property at $557,000.  Coldwell Banker conveyed to Plaintiffs that this appraisal value was

13   unrealistic in that it relied too heavily on sales of neighborhood properties that were in turnkey

14   condition at the time of sale, ignoring the Ladera Ranch market's absolute preference for

15   turnkey homes with modern décor and amenities and ignoring the impact of the home's

16   defects, and its needed repairs and needed updated floors and fixtures, on the purchase price.

17       62.     In or about June 2016, Plaintiffs received notice that the Subject Loan had been

18   assigned to Trustee Corp. for foreclosure proceedings.

19       63.     In June and July 2016, Coldwell Banker continued to attempt to negotiate with

20   PHH regarding the short sale, but, upon information and belief, PHH repeatedly expressed a

21   preference for foreclosure and intentionally delayed both deeming Plaintiff Jennifer Bagosy's

22   loan modification documents "complete" and submitting to Wells Fargo, the investor, for

23   consideration the buyer's offer on the Subject Property.

24       64.     In August 2016, Plaintiffs filed their tax returns before the extended October

25   due date because PHH refused to consider the short sale offer without the returns, incurring

26   costs associated with engagement of a CPA to assist with the early filing.

27       65.     In September 2016, at Coldwell Banker's behest, PHH sent another appraiser to

28   the Subject Property. PHH refused to disclose the appraisal report or the appraisal value to

1   Plaintiffs or Coldwell Banker.  Approximately two or three months later, Coldwell Banker

2   learned that PHH had "lost" the second appraisal report and had no record of it. Plaintiffs

3   called the appraiser, who confirmed that he had sent PHH the appraisal report within a week

4   of its completion.  The appraiser refused to send Plaintiff a copy, stating that PHH did not

5   authorize him to do so. Nor could he send another copy to PHH unless PHH contacted him

6   and requested it.  Upon information and belief, although Coldwell Banker requested PHH

7   contact the appraiser for the replacement report, they never did so.

8        66.    Coldwell Banker continued to negotiate with PHH, and, upon information and

9   belief, PHH failed to negotiate in good faith with Plaintiffs through Coldwell Banker,

10   engaging in the same or similar dilatory practices as PHH had with Plaintiffs.  PHH also

11   willfully refused to acknowledge that the Subject Property would and could not sell for the

12   initially-appraised price of $557,000 in its condition and given the local market's dictates for

13   turnkey, updated homes. Also, upon information and belief, PHH also failed to negotiate in

14   good faith with Ditech, the holder of the Second Mortgage.

15       67.    During this time, Plaintiffs had to spend time, and Ms. Bagosy had to take time

16   off work, to continue regularly preparing and submitting new and updated loan modification

17   package documents, typically through Coldwell Banker, because PHH would delay by

18   claiming documents Plaintiffs or Coldwell Banker sent were not received and/or were

19   illegible, and then deem the documents out of date and require new ones.

20       68.    On November 9, 2016, Plaintiffs found a Notice of Sale on the door of the

21   Subject Property stating that the home would be sold on November 30, 2016.

22       69.    On November 22, 2016, Coldwell Banker informed Plaintiffs that PHH had

23   finally submitted the short sale offer to WELLS. Plaintiffs confirmed with Trustee Corps that

24   the foreclosure sale would be postponed.

25       70.    On November 23, 2016, at PHH's request, Plaintiffs obtained a Payoff Quote

26   of the Subject Loan from Trustee Corps of $482,643.33, almost $30,000 more than the

27   December 2015 Payoff Quote of $453,653.13.

28       71.    In or about December 2016, the buyers of the Subject Property reduced their

Page 17

COMPLAINT

1   offer to $450,000.

2       72.     In approximately December 2016, PHH agreed to the buyer's offer to purchase

3   the Subject Property for $450,000. Although PHH had repeatedly expressed to Coldwell

4   Banker its preference for a foreclosure sale, PHH agreed to the short sale due to "economic

5   uncertainty," which, upon information and belief, referred to the upcoming change in

6   Presidential administration and the unknown changes that might cause within the housing

7   market and economy in general.

8       73.     Although PHH agreed to the buyer's offer in December 2016, PHH continued

9   negotiating with Ditech regarding Ditech's portion of the proceeds. Upon information and

10  belief, although Ditech owned approximately 1/5 of the total mortgage debt on the Subject

11  Property, PHH unreasonably and in bad faith insisted at first that Ditech should receive

12  nothing, causing further delays to the short sale.

13      74.     The short sale closed on February 28, 2017, for the purchase price of $450,000.

14  After charges and commission, PHH received approximately $407,900; Ditech received

15  approximately $12,000.

16      75.     Upon information and belief, the buyer performed all necessary repairs to the

17  Subject Property and made substantial improvements to the interior of the home, including

18  new flooring, cabinets, and fixtures. Upon information and belief, these improvements cost

19  less than $75,000.

20      76.     Upon information and belief, the buyer re-sold the Subject Property in June

21  2017 for $625,000.

22      77.     Upon information and belief, the current estimated value of the Subject

23  Property is $661,000.

24      78.     Upon information and belief, had Defendants not fraudulently, intentionally,

25  negligently and/or in bad faith engaged in each and all of the delays set forth above, Plaintiffs

26  either: (a) would have been able to divest themselves of the Subject Property by early 2016,

27  halting their damages, including to creditworthiness, that extended through the short sale date

28  of February 2017; or (b) would have been able to obtain a loan modification that would have

COMPLAINT

1   halted the damages, including to Plaintiffs' creditworthiness, as of December 2015, after

2   which Plaintiffs would have been able remain in the property, make the needed repairs to the

3   Subject Property by 2017, and sell it an ultimate resale value that would have enabled

4   Plaintiffs to earn a profit from the Subject Property's sale.

5                              **FIRST CAUSE OF ACTION**

6                              **Intentional Misrepresentation**

7                              **(Against all Defendants)**

8            79.    Plaintiffs incorporate by reference and re-alleges as if fully stated herein the

9   material allegations set out in paragraphs 1 through 75.

10           80.    Each of the representations alleged herein were made through Defendants by

11  mail to Plaintiffs at the Subject Property in Ladera Ranch, California; by telephone to Plaintiff

12  Jennifer Bagosy at her home phone in Ladera Ranch, California; or by telephone to Plaintiff

13  Jennifer Bagosy on her cellular phone.

14           **Intentional Misrepresentations Regarding Loan Modification Packages**

15           81.    First, PHH and Doe Defendants (collectively "Defendants") intentionally

16  misrepresented, by mail and by phone, on several occasions throughout 2015 as discussed

17  above, that if Plaintiff Jennifer Bagosy sent a complete loan modification package, Defendants

18  would consider it within 30 days. In fact, Defendants never had any intention of considering

19  Plaintiff Jennifer Bagosy's loan modification packages submitted in February through June

20  2015 at all.  Relatedly, Defendants, on numerous occasions via mail and by phone,

21  misrepresented the status of Plaintiff's loan modification packages as incomplete, when in fact

22  they were complete.

23           82.    Specifically, Defendants intentionally printed and re-scanned documents that

24  Plaintiff sent via email/PDF, which were legible when Plaintiff Jennifer Bagosy sent them, to

25  render them illegible in Defendants' systems which was the only format in which Case

26  Managers were allowed to view the documents.  Defendants also intentionally discarded

27  Plaintiff Jennifer Bagosy's loan modification documents, including individual pages of

28  documents that Plaintiff Jennifer Bagosy sent via UPS in May 2015 and via U.S. mail in

February and October 2015. Defendants' pattern and practice of discarding pages of loan modification packages to ensure they could not be "complete" was evident from Ms. Meng's location of Ms. Bagosy's allegedly "missing" documents discarded in a colleague's office in May 2015. In furtherance of and as evidence of Defendants' scheme to intentionally misrepresent its intentions to Plaintiffs regarding consideration of loan modification packages, and to intentionally misrepresent the status of Plaintiff Jennifer Bagosy's loan modification packages, Defendants forbid its Case Managers, who were to serve as single points of contact, from "receiving" documents personally, either by mail or by e-mail. This rule furthered Defendants' scheme of intentionally misrepresenting the status of loan modification documents, because the individual(s) most closely associated with borrowers' account(s) were intentionally forbidden from verifying that all documents were legible and complete as submitted.

83.     These misrepresentations were material because they concerned the Subject Loan and Plaintiff's obligations thereunder. Defendants intended that Plaintiffs rely on its promises to consider the loan modification package within 30 days if complete, and intended that Plaintiffs rely on its representations regarding the status of the loan modification package documents.  Upon information and belief, the longer Defendants misrepresented the status of the loan modification package while giving Plaintiffs false hope that a modification might be granted, the less likely it would be that Plaintiffs would default on the mortgage or file for bankruptcy.

84.     Plaintiff Jennifer Bagosy did rely on these misrepresentations by continuing to expend time that could otherwise have been spent on her job search, and spent money, preparing and submitting additional documents in support of each loan modification package. Plaintiff's reliance on Defendants' representations was reasonable because Defendants and their representatives represented to Plaintiff Jennifer Bagosy that Defendant PHH had the authority to make determinations regarding the loan modification package.

85.     Plaintiffs relied on Defendants' misrepresentations and suffered damages as a result of this reliance.

**Intentional Misrepresentations Regarding Forbearance Agreement**

86.     On or about June 29, 2015 Defendants intentionally misrepresented to Plaintiff Jennifer Bagosy in a letter sent by regular mail, that she would be permitted to pay $700 for three months –August, September, and October 2015 –  in reduced mortgage payments as part of a "forbearance." This representation was false and/or misleading because PHH withheld that immediately upon Plaintiff Jennifer Bagosy's fulfillment of the 3 months' reduced payments, it would accelerate the loan, and demand all past due payments including the remainder of the regular mortgage payments for those three months, for a total of $11,900, to avoid foreclosure.

87.     These misrepresentations were material because they concerned the Subject Loan and Plaintiff's obligations thereunder. Defendants intended that Plaintiffs rely on these representations, as Defendants and Plaintiff Jennifer Bagosy entered into the Forbearance.

88.     In reliance on Defendants' representations, Plaintiff entered into the Forbearance with the belief that if she paid the amounts stated in the Forbearance for the three specified months of August, September and October, she would satisfy her mortgage payment obligations for those three months and would not be foreclosed upon or deemed to have missed those months' payments.  Plaintiffs did, in fact, rely on these representations by making each of the three $700 payments by the date specified in August, September and October 2015. Plaintiffs further relied on Defendants' representations by selling personal possessions in order to make all of the $700 payments for those three months.

89.     Plaintiffs' reliance on Defendants' representations was reasonable because Defendants and Ms. Meng represented to Plaintiff Jennifer Bagosy that Defendants had the authority to enter into the Forbearance.

90.     In reliance on Defendants' representations, Plaintiff Jennifer Bagosy entered into the Forbearance with the belief that if she paid the amounts stated in the Forbearance for the three specified months of August, September and October, she would satisfy her mortgage payment obligations for those three months and would not be foreclosed upon or deemed to have missed those months' payments.

91.     Plaintiffs actually relied on Defendants' misrepresentations and suffered damages as a result of this reliance.

**Intentional Misrepresentation Regarding First Short Sale Attempt**

92.     Defendants committed a further intentional misrepresentation when they rejected the short sale offer of $440,000 presented by Land Pacific Realty, acting as Plaintiffs' agent, for the Subject Property in November 2015. Specifically, PHH as servicer was required to present any offer to investor Wells Fargo before accepting or rejecting it.  However, Defendants informed Land Pacific Realty they were rejecting the short sale offer, and Plaintiffs later learned from agents at Coldwell Banker that PHH had never presented this offer to Wells Fargo.

93.     These misrepresentations were material because Defendants used the improper and unauthorized rejection of the short sale offer to justify placing the home in active foreclosure in December 2015.

94.     Defendants intended that Plaintiff rely on its misrepresentations because it used the rejection as grounds to place the home into active foreclosure and to pressure Plaintiffs into seeking a deed in lieu of foreclosure. Plaintiffs relied on Defendants' misrepresentation that it had the authority to reject, and had rejected, the November 2015 short sale offer by pursuing (again at Defendants' behest) a deed in lieu of foreclosure. Plaintiffs' reliance was reasonable because Defendants represented to Land Pacific, as Plaintiffs' agent, that they had authority to reject the November 2015 short sale offer.

95.     Plaintiffs suffered damage as a result of this reliance because the Subject Property was placed into active foreclosure, causing Plaintiff Jennifer Bagosy further harm to her creditworthiness, and causing Plaintiffs additional financial and emotional distress.

**Intentional Misrepresentations Regarding Deed in Lieu of Foreclosure**

96.     Defendants also intentionally misrepresented to Plaintiff Jennifer Bagosy on several occasions between January and April 2016 that the Subject Property was eligible to apply for a deed in lieu of foreclosure.

97.     These misrepresentations were material because they concerned the Subject

COMPLAINT

1 Loan and Plaintiff's obligations thereunder. They were also material because Defendants used
2 the ultimate rejection of Plaintiffs' deed in lieu application as a basis to place the home into
3 active foreclosure.

4     98.     Defendants intended for Plaintiffs to rely on these misrepresentations as they
5 encouraged Plaintiff Jennifer Bagosy to submit, and to keep submitting, documentation in
6 support of an application for a deed in lieu of foreclosure, from January 2016 through April
7 2016, while knowing that Plaintiff's Second Mortgage rendered her ineligible for a deed in
8 lieu of foreclosure and while knowing that Plaintiffs lacked the means to pay off the Second
9 Mortgage.

10     99.     Plaintiffs actually relied on these misrepresentations by submitting the
11 information in support of the deed in lieu and refraining from exercising other rights, such as
12 filing for bankruptcy, that could have diminished Defendants' interest in the Subject Loan.

13     100.     Defendants' misrepresentations caused harm to Plaintiffs in terms of time and
14 money spent preparing the applications, damage to creditworthiness, and emotional distress.
15 Moreover, throughout this time period, Plaintiff Jennifer Bagosy had to continue living in the
16 Subject Property as her primary residence to qualify for any relief, and thus continued to incur
17 damages associated with her 140-mile a day roundtrip commute to work.

18 **Intentional Misrepresentations Regarding the Second Short Sale Attempt**

19     101.     Defendants committed further intentional misrepresentations throughout the
20 course of Plaintiffs' second attempt to short sell the Subject Property, which began in May
21 2016 and continued through the date of closing on the short sale in February 2017.

22     102.     Defendants, in negotiating with Plaintiffs' agents Coldwell Banker between
23 May 2016 and February 2017, continued their pattern and practice of intentionally printing
24 and re-scanning documents to render them illegible and intentionally discarding documents,
25 and intentionally misrepresenting to Plaintiffs, through Coldwell Banker, that the materials
26 submitted were incomplete.

27     103.     Defendants also intentionally misrepresented the status of its second appraisal
28 report, claiming that the report had been "lost." As evidence that the misrepresentation was

1  intentional, Defendants refused to request a replacement report from the appraiser upon being

2  notified that the appraiser had completed and sent the report months before and would re-send

3  upon request from Defendants.  Upon information and belief, Defendants made this

4  intentional misrepresentation to avoid having to disclose that he appraisal had come in below

5  the amount of the first appraisal, thus enabling it to delay accepting the short sale offer.

6       104.    These misrepresentations were material because they directly impacted

7  Plaintiffs' attempt to sell the Subject Property.

8       105.    Defendants intended that Plaintiffs rely on its misrepresentations and continue

9  submitting materials in support of the short sale, submit to multiple appraisals, hire a CPA to

10  complete their tax returns before the extended due date, and comply with all requests. If

11  Defendants had disclosed to Plaintiffs the truth, that it intended to foreclose and would reject

12  any short sale offer after delaying for the maximum amount of time, Defendants could

13  maximize value by delaying until the market could rise, and stave off any attempt by either or

14  both Plaintiffs to exercise their right to file for bankruptcy.  Only when faced with a

15  potentially-unprecedented national political environment did Defendants finally agree to the

16  short sale.  Plaintiffs did rely on Defendants' misrepresentations by continuing to take steps in

17  pursuit of the second short sale. Plaintiffs' reliance was reasonable because Defendants acted

18  with apparent authority to make these representations.

19       106.    Plaintiffs suffered damage as a result of this reliance because the damage to

20  Plaintiffs' creditworthiness continued to increase as the period of default extended through

21  February 2017. Plaintiffs also continued to suffer harm including additional expenses,

22  including the cost of a CPA to prepare their taxes, severe emotional distress, and damages in

23  the form of Plaintiff Jennifer Bagosy's expenses associated with her 140 mile roundtrip

24  commute to work. Plaintiffs suffered additional damages in the form of lost profits associated

25  with the ultimate sale of the home.

26       107.    Defendants' conduct was willful, wanton, reckless, oppressive such that

27  Plaintiff is entitled to an award of punitive damages.

28                          **SECOND CAUSE OF ACTION**

COMPLAINT

**Negligent Misrepresentation**

**(Against All Defendants)**

108.     Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 104.

109.     Each of the representations alleged herein were made through Defendants by mail to Plaintiffs at the Subject Property in Ladera Ranch, California; by telephone to Plaintiff Jennifer Bagosy at her home phone in Ladera Ranch, California; or by telephone to Plaintiff Jennifer Bagosy on her cellular phone.

110.     Each of the aforementioned misrepresentations described in Paragraphs 76 to 104, was also negligent, because Defendants knew, or should have known with the exercise of ordinary care, that each of these representations were false.

111.     Each of the aforementioned misrepresentations described in Paragraphs 76 to 104 was material for the reasons stated above, and Defendants intended Plaintiff to rely on them, and Plaintiff did rely on them, and that reliance was reasonable, for the reasons stated above. Plaintiffs suffered damages as a result of Defendants' misrepresentations as described above.

**THIRD CAUSE OF ACTION**

**Fraud and Deceit**

**(Against All Defendants)**

112.     Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 108.

113.     As set forth above in paragraphs 76 through 104, PHH and the Doe Defendants made misrepresentations, with knowledge of the falsity of these misrepresentations, with intent to induce reliance, in which Plaintiffs did justifiably rely, and for which Plaintiffs suffered damages.

**FOURTH CAUSE OF ACTION**

**Breach of Contract**

**(Against All Defendants)**

COMPLAINT

1     114.    Plaintiff incorporates by reference and re-alleges as if fully stated herein the

2    material allegations set out in paragraphs 1 through 110.

3     115.    On or about June 29, 2015, Defendants made to Plaintiff Jennifer Bagosy a

4    written offer of a temporary, three-month "forbearance," during which the payments on the

5    Subject Loan would be reduced from $3500 a month to $700 per month for August,

6    September, and October 2015.

7     116.    Ms. Bagosy accepted the offer by making the first $700 payment for the month

8    of August 2015 by the date specified in July 2015.

9     117.    Plaintiffs complied with the terms of the Forbearance Agreement by making the

10   remaining two $700 payments in September and October 2015.

11     118.    Defendants breached the Forbearance Agreement by, sending, on or about

12   October 8, 2015, a Notice of Default stating that the Subject Loan was five (5) months past

13   due, that Defendants had accelerated the Subject Loan, that the Subject Loan was in default,

14   that Defendants would not accept the $2100 in forbearance payments Ms. Bagosy had made in

15   $700 installments in August, September and October, and demanding first $14,000, then

16   $11,900, by November 12, 2015, Defendants would foreclose on the Subject Property.

17     119.    In December 2015, Defendants then did place the home into active foreclosure.

18     120.    As a result of Defendants' breach of the Forbearance Agreement, Plaintiffs

19   suffered damages including harm to their creditworthiness, costs of pursuing legal action, and

20   lost profits associated with the Subject Property.

21                   **FIFTH CAUSE OF ACTION**

22                      **Promissory Estoppel**

23                   **(Against All Defendants)**

24    121.    Plaintiff incorporates by reference and re-alleges as if fully stated herein the

25   material allegations set out in paragraphs 1 through 117.

26    122.    On or about June 29, 2015, Defendants promised to Plaintiff Jennifer Bagosy in

27   writing that she would be permitted to make reduced payments of $700 per month, instead of

28   $3500 per month, for August, September, and October 2015.

COMPLAINT

123.    As a result, Plaintiffs relied to their detriment on Defendants' promise of a forbearance, and made payments of $700 in August, September, and October 2015.

124.    Defendants breached the Forbearance Agreement by, sending, on or about October 5, 2015, a Notice of Default stating that the Subject Loan was five (5) months past due, that Defendants had accelerated the Subject Loan, that the Subject Loan was in default, that Defendants would not accept the $2100 in forbearance payments Ms. Bagosy had made in $700 installments in August, September and October, and demanding first $14,000, then $11,900, by November 12, 2015, Defendants would foreclose on the Subject Property.

125.    Plaintiffs' reliance on Defendants' representations was reasonable, justified and foreseeable because Defendants represented to Plaintiffs that they had the authority to modify the Subject Loan by entering into the forbearance.

126.    As a direct and proximate result of Defendants' breach of the forbearance, Plaintiffs suffered damages including harm to their creditworthiness, costs of pursuing legal action, and lost profits associated with the Subject Property.

<div align="center">

**SIXTH CAUSE OF ACTION**

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**(Against All Defendants)**

</div>

127.    Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 123.

128.    In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract, and a breach of this covenant by failure to deal fairly or in good faith gives rise to an action for damages.

129.    On or about June 29, 2015, Defendants made to Plaintiff Jennifer Bagosy a written offer of a temporary, three-month "forbearance," during which the payments on the Subject Loan would be reduced from $3500 a month to $700 per month for August, September, and October 2015. Ms. Bagosy accepted the offer by making the first $700 payment by the date specified in July 2015.

1        130.    Defendants had a duty to honor the terms of the Forbearance Agreement and to

2    refrain from acting in a way that would prevent Plaintiff from performing under the

3    Forbearance Agreement or under the Subject Loan to which the Forbearance applied.

4        131.    As set forth above, Plaintiffs complied with the terms of the Forbearance

5    Agreement by making the remaining two $700 payments, and Defendants breached the

6    Forbearance Agreement by, sending, on or about October 8, 2015, a Notice of Default stating

7    that the Subject Loan was five (5) months past due, that Defendants had accelerated the

8    Subject Loan, that the Subject Loan was in default, that Defendants would not accept the

9    $2100 in forbearance payments Ms. Bagosy had made in $700 installments for August,

10    September and October, and demanding first $14,000, then $11,900, by November 12, 2015,

11    Defendants would foreclose on the Subject Property.

12        132.    In December 2015, Defendants then did place the home into active foreclosure.

13        133.    As a proximate result of Defendants' breach of the Forbearance Agreement,

14    Plaintiffs suffered damages including harm to their creditworthiness, costs of pursuing legal

15    action, and lost profits associated with the Subject Property.

16        134.    Defendants further breached the covenant of good faith and fair dealing in

17    failing to adhere to its agreement to consider, within 30 days, a completed package for loan

18    modification or other mortgage relief that Plaintiff submitted.  Plaintiff submitted numerous

19    packages seeking loan modifications, forbearances, a deed in lieu of foreclosure, and short

20    sale, each of which was thwarted by Defendants' failure to consider them within 30 days by

21    utilizing intentional, negligent, fraudulent, and/or bad faith practices of "misplacing," losing

22    or discarding documents, rendering documents illegible by requiring them to be printed and

23    re-scanned, and forbidding Case Managers from reviewing the documents in their original

24    form to determine whether the borrower had sent them in the correct, legible format.  Each

25    such occurrence constitutes a breach of good faith and fair dealing.

26    <div align="center">**EIGHTH CAUSE OF ACTION**</div>

27    <div align="center">**Negligence**</div>

28    <div align="center">**(Against All Defendants)**</div>

COMPLAINT

135.    Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 131.

136.    Defendants had a duty to provide accurate and reliable information to Plaintiffs regarding loan modification applications and the status thereof, regarding the documents Plaintiffs submitted in support of those applications, regarding the Forbearance Agreement, the deed in lieu of foreclosure, and the short sale attempts. Defendants breached this duty of care as described in detail above, by failing to retain all documents submitted to them but instead misplacing or discarding them; by maintaining a policy and practice of printing and re-scanning all electronically-submitted documents such that they became illegible; and by forbidding Case Managers from reviewing the original documents sent to determine if they were properly sent.  These policies and practices constituted negligence as to Plaintiffs because Defendants repeatedly misplaced, discarded, and/or scanned Plaintiffs' documents, in such a manner as to render them illegible, leading to innumerable delays in Plaintiffs' attempt to resolve the Subject Loan, and actual and proximate harm in the form of out-of-pocket expenses, harm to creditworthiness, emotional distress and other damages. Likewise, Defendants negligently misplaced the second appraisal report, unduly delaying the short sale process and causing Plaintiffs additional damages.

137.    Defendants also negligently provided Plaintiffs with inaccurate information regarding, e.g., the documents needed for loan modification applications; the status of Plaintiffs' loan modification application(s); and Plaintiffs' eligibility for a deed in lieu of foreclosure. Defendants breached their duty of ordinary care by providing this misinformation and caused Plaintiffs damages thereby.

## NINTH CAUSE OF ACTION

### Violation of Civil Code § 2923.7

### (Against PHH)

138.    Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 134.

139.    California Civil Code section 2923.7(a)-(c) provides that:

COMPLAINT

1       (a) Upon request from a borrower who requests a foreclosure prevention

2       alternative, the mortgage servicer shall promptly establish a single point of

3       contact and provide to the borrower one or more direct means of communication

4       with the single point of contact.

5       (b) The single point of contact shall be responsible for doing all of the following:

6       (1) Communicating the process by which a borrower may apply for an

7       available foreclosure prevention alternative and the deadline for any

8       required submissions to be considered for these options.

9       (2) Coordinating receipt of all documents associated with available

10       foreclosure prevention alternatives and notifying the borrower of any

11       missing documents necessary to complete the application.

12       (3) Having access to current information and personnel sufficient to

13       timely, accurately, and adequately inform the borrower of the current

14       status of the foreclosure prevention alternative.

15       (4) Ensuring that a borrower is considered for all foreclosure prevention

16       alternatives offered by, or through, the mortgage servicer, if any.

17       (5) Having access to individuals with the ability and authority to stop

18       foreclosure proceedings when necessary.

19       (c) The single point of contact shall remain assigned to the borrower's account

20       until the mortgage servicer determines that all loss mitigation options offered by,

21       or through, the mortgage servicer have been exhausted or the borrower's account

22       becomes current.

23       140.    As set forth in detail above, although Plaintiffs were assigned to a single point

24  of contact, Dawn Meng, PHH nonetheless violated Civil Procedure Code section 2923.7 by

25  failing to have the single point of contact be the person responsible for "[c]oordinating receipt

26  of all documents associated with available foreclosure prevention alternatives...." Indeed,

27  PHH expressly forbid Ms. Meng from "receiving documents;" thus, Ms. Meng could not

28  perform her statutorily-required function of coordinating the receipt of documents Plaintiff

COMPLAINT

1    Jennifer Bagosy sent as part of her application(s) for foreclosure prevention alternatives.

2         141.   PHH also failed to ensure that Plaintiffs had a single point of contact with

3    "access to current information and personnel sufficient to timely, accurately, and adequately

4    inform the borrower of the current status of the foreclosure prevention alternative." As

5    discussed in detail above, when Ms. Meng was unavailable, the PHH representatives who took

6    Plaintiff Jennifer Bagosy's calls provided conflicting and inaccurate information, regarding

7    loan modification applications, the deed in lieu application, and the short sale applications.

8         142.   Plaintiff suffered damages as the proximate result of PHH's violation of

9    California Civil Code section 2923.7 in the form of expenses, harm to creditworthiness, lost

10   profits, emotional distress, and other forms of damages incurred by the delays resulting from

11   PHH's failure to comply with the statute.

12                          **TENTH CAUSE OF ACTION**

13        **Violation of California Business & Professions Code §§ 17200, et seq.**

14                            **(Against All Defendants)**

15        143.   Plaintiffs incorporate by reference and re-allege as if fully stated herein the

16   material allegations set out in paragraphs 1 through 139.

17        144.   Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

18   unlawful and harmful to Plaintiffs, and to the general public. Defendants' activities, as alleged

19   herein, are violations of California law, and this conduct constitutes unlawful or unfair

20   business practices within the meaning of California Business & Professions Code section

21   17200, *et seq.*

22        145.   Defendants have acted in a manner that is both wrongful and likely to mislead

23   members of the general public. Therefore, Plaintiffs seek to enforce important rights affecting

24   the public interest within the meaning of Code of Civil Procedure section 1021.5.

25        146.   As a result of Defendants' wrongful conduct, Plaintiffs have suffered and

26   continued to suffer damages and injuries in an amount subject to proof at trial.  Plaintiffs have

27   suffered actual injury, including out of pocket expenses, lost profits, damage to

28   creditworthiness, attorneys' fees and costs of litigation.

COMPLAINT

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against all Defendants)

147.　Plaintiff incorporates by reference and re-allege as if fully stated herein the material allegations set out in paragraphs 1 through 143.

148.　Defendants engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing Plaintiffs emotional distress. Defendants were aware that Plaintiffs strongly wished to retain the Subject Property but acted in a way to deprive them of the Subject Property, as alleged above, and without right or justification.　Defendants were also aware that, beginning some time after December 2015, since Defendants had informed Plaintiffs that no loan modification would be possible that would enable Plaintiffs to remain in the home while local market values rose that would enable Plaintiffs to sell the home at a later date and not at a loss, Defendants' (1) unjustified rejection of the first short sale attempt, (2) provision of false information about the deed in lieu of foreclosure that led to four months' additional delays, and (3) extreme bad faith delays in negotiating the second short sale, would lead to Notices of Sale being placed on Plaintiffs' door and sale dates that were only narrowly averted at the last moment.

149.　Plaintiffs did, in fact, suffer extreme and/or severe emotional distress.

150.　Defendants' extreme and outrageous conduct was the actual and proximate cause of Plaintiffs' extreme and/or severe emotional distress

151.　Defendants' conduct exceeded all bounds of decency in a civilized society.

152.　As a result of Defendants' extreme and outrageous conduct, Plaintiffs are entitled to compensatory damages sufficient to make them whole for the extreme and severe emotional distress they suffered.

153.　Defendants acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable emotional and physical consequences to Plaintiffs, and with knowledge that their conduct was substantially certain to vex, annoy, and injure Plaintiffs. Plaintiffs are therefore entitled to punitive

1   damages under California Civil Code section 3294, in an amount sufficient to punish or make

2   an example of Defendants.

3   <center>**REQUEST FOR JURY TRIAL**</center>

4   Plaintiff requests a trial by jury.

5   <center>**PRAYER FOR RELIEF**</center>

6   Plaintiff prays for relief and judgment against Defendants, jointly and severally, as

7   follows:

8   1.   For compensatory damages in an amount to be determined by proof at trial;

9   2.   For special damages in an amount to be determined by proof at trial;

10   3.   For general damages in an amount to be determined by proof at trial;

11   4.   For statutory damages in an amount to be determined by proof at trial;

12   5.   For punitive damages;

13   6.   For removal of any and all derogatory information reported to any and all credit

14   reporting agencies and/or bureaus relating to the transaction involved herein;

15   7.   For any prejudgment or other interest according to law;

16   8.   For attorneys' fees; and

17   9.   Such other relief as set forth and requested above.

18

19   Dated:  June 25, 2018                    FARNAES & LUCIO, APC

20

21

22                                           MALTE L. L. FARNAES
                                             CHRISTINA M. LUCIO
23                                           MITCHELL J. MURRAY

24

25

26

27

28

<center>COMPLAINT</center>

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME: Central Justice Center | **FOR COURT USE ONLY**<br>**FILED**<br>*SUPERIOR COURT OF CALIFORNIA*<br>*COUNTY OF ORANGE* |
| PLANTIFF:Jennifer Bagosy et.al. | |
| DEFENDANT:PHH Mortgage Services | **Jul 13, 2018** |
| Short Title: Bagosy vs. PHH Mortgage Services | Clerk of the Superior Court<br>By: **Cora Bolisay**, Deputy |
| **NOTICE OF HEARING** | CASE NUMBER:<br>30-2018-01002146-CU-CO-CJC |

Please take notice that a(n), <u>Case Management Conference</u>  has been scheduled for hearing on <u>11/29/2018</u> at <u>08:30:00 AM</u> in Department <u>C20</u>  of this court, located at  <u>Central Justice Center</u> .

Clerk of the Court,  By: _____ , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

**SHORT TITLE:** Bagosy vs. PHH Mortgage Services

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>**30-2018-01002146-CU-CO-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above <u>Notice of Hearing</u> has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practice and addressed as indicated below. The certification occurred at <u>Santa Ana</u>, <u>California</u>, on <u>07/13/2018</u>. Following standard court practice the mailing will occur at <u>Sacramento</u>, <u>California</u> on <u>07/16/2018</u>.

Clerk of the Court, by: _____ , Deputy

FARNAES & LUCIO, APC
2235  ENCINITAS BOULEVARD # 210
ENCINITAS, CA 92024

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

**V3 1013a (June 2004)**

Code of Civil Procedure , § CCP1013(a)

# SUPERIOR COURT OF CALIFORNIA

## ORANGE

**700 W. Civic Center DRIVE**

**Santa Ana , CA 92702**

**(657) 622-6878**

**www.occourts.org**

## NOTICE OF CASE ASSIGNMENT

Case Number: **30-2018-01002146-CU-CO-CJC**

Your case has been assigned for all purposes to the judicial officer indicated below. A copy of this information must be provided with the complaint or petition, and with any cross-complaint that names a new party to the underlying action.

| ASSIGNED JUDGE | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
|---|---|---|---|
| Hon.<br>  David Chaffee | Central Justice Center | C20 | (657) 622-6878 |
| Hearing: | Date: | Time: | |
| JUDGE | COURT LOCATION | DEPARTMENT/ROOM | PHONE |
| Hon. | | | |

[ x ]  ADR Information attached.

# SCHEDULING INFORMATION

**Judicial Scheduling Calendar Information**

Individual courtroom information and the items listed below may be found at: www.occourts.org.

Case Information, Court Local Rules, filing fees, forms, Civil Department Calendar Scheduling Chart, Department phone numbers, Complex Civil E-filing, and Road Map to Civil Filings and Hearings.

**Ex Parte Matters**

Rules for Ex Parte Applications can be found in the California Rules of Court, rules 3.1200 through 3.1207 at: www.courtinfo.ca.gov.  Trials that are in progress have priority; therefore, you may be required to wait for your ex parte hearing.

**Noticed Motions**

\* The following local Orange County Superior Court rules are listed for your convenience:
  - Rule 307 - Telephonic Appearance Litigants - Call CourtCall, LLC at (310) 914-7884 or (888) 88-COURT.
  - Rule 380 - Fax Filing, Rule 450 - Trial Pre-Conference  (Unlimited Civil)
\* All Complex Litigation cases are subject to mandatory Electronic Filing, unless excused by the Court.
\* Request to Enter Default and Judgment are strongly encouraged to be filed as a single packet.

**Other Information**

Hearing dates and times can be found on the Civil Department Calendar Scheduling Chart.

All fees and papers must be filed in the Clerk's Office of the Court Location address listed above.

Date:  06/28/2018

_Mary M Johnson_____, Deputy Clerk

## NOTICE OF CASE ASSIGNMENT

V3 INIT 100 (June 2004)